**Bruce F. BOTSFORD, Plaintiff–Appellee,**

v.

**BLUE CROSS AND BLUE SHIELD OF MONTANA, INC.; Blue Cross and Blue Shield Association, Defendants–Appellants.**

No. 01–36019.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed Dec. 23, 2002.

Anthony F. Shelley (argued), Miller & Chevalier, Chartered, Washington, DC, Bradley J. Luck, Garlington, Lohn & Rob-

inson, PLLP, Missoula, Montana, for the appellants.

Michael J. Lilly, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana, for the appellee.

Before TROTT, T.G. NELSON, and THOMAS, Circuit Judges.

## OPINION

T.G. NELSON, Circuit Judge:

Defendants, Blue Cross and Blue Shield of Montana, Inc. ("Blue Cross") appeal the district court's dismissal of Bruce F. Botsford's suit against them for lack of jurisdiction. Because we conclude that the Federal Employees Health Benefits Act[1] (FEHBA) completely preempts Botsford's claim against Blue Cross, and that his claim thus arose under federal law, we reverse and remand.

## I. BACKGROUND

After undergoing a $3,036.00 medical procedure and submitting the requisite paperwork to his FEHBA-covered health plan, Botsford received a reimbursement check for only $915.74 from Blue Cross. The physician who had performed Botsford's procedure was a non-participating provider, and the plan would not pay his bill in full. Botsford paid his physician and did some research. Convinced that Blue Cross had not followed the method of determining reimbursement set forth in the brochure describing benefits that he had received, Botsford brought this suit.

Botsford filed six claims in federal court alleging various state common law causes of action, such as fraud, negligent misrepresentation, and breach of contract. He also alleged one state statutory claim. In that claim, Botsford alleged that Blue Cross had violated the Montana Unfair Trade Practices Act[2] by misrepresenting the policy regarding reimbursement of non-participating providers.

Eventually, Botsford moved to dismiss voluntarily and without prejudice all claims except the state-law fraud claim. The district court granted his motion. Then, Blue Cross moved to dismiss the fraud claim, asserting that FEHBA, and the regulations promulgated pursuant to it, preempted that claim. The court, at that point, questioned whether federal jurisdiction over the case existed.

The district court concluded that it lacked jurisdiction. The court reasoned that Botsford's complaint was inherently a dispute over a contract, not a dispute involving a constitutional provision, federal law, or treaty. Although Blue Cross presented a federal defense, the court noted that a federal defense alone does not confer federal jurisdiction. Accordingly, the district court dismissed for lack of jurisdiction. Blue Cross appealed.

## II. STANDARD OF REVIEW

■ We review the district court's decision regarding the absence of subject matter jurisdiction de novo.[3] Similarly, we

---

**1.** 5 U.S.C. §§ 8901–8914 (2002).

**2.** The Montana Unfair Trade Practices Act provides in relevant part:
No person may, with such frequency as to indicate a general business practice, do any of the following:
(1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.

MONT. CODE ANN. § 33–18–201(1) (2002).

**3.** *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1024 (9th Cir.2001), *cert. denied,* 534 U.S. 1082, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002).

review the district court's determination of complete preemption de novo.[4]

## III. DISCUSSION

■ A federal defense to a state-law claim does not confer jurisdiction on a federal court.[5] Thus, a plaintiff may generally avoid federal jurisdiction through artful pleading of solely state-law claims. An exception to this general proposition exists, however. If federal law completely preempts a plaintiff's state-law claim, that plaintiff may not escape federal jurisdiction no matter how careful his or her pleading. "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." [6]

■ To preempt state-law causes of action completely, federal law must both: (1) conflict with state law (conflict preemption) and (2) provide remedies that displace state law remedies (displacement).[7] For the reasons set forth below, we conclude that FEHBA's express preemption clause conflicts with the Montana statute in question, Montana Code Section 33–18–201(1).

4. *Roach v. Mail Handlers Benefit Plan, CNA,* 298 F.3d 847, 849 (9th Cir.2002).

5. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 13–14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

6. *Balcorta v. Twentieth Century-Fox Film Corp.,* 208 F.3d 1102, 1107 (9th Cir.2000).

7. *See Abraham v. Norcal Waste Sys., Inc.,* 265 F.3d 811, 819 (9th Cir.2001) (discussing complete preemption in the context of the Employee Retirement Income Security Act (ERISA)), *cert. denied,* 123 S.Ct. 686, 70 U.S.L.W. 3535 (U.S. Dec. 9, 2002) (No. 01–1179).

8. 5 U.S.C. § 8902(m)(1) (2002).

Moreover, FEHBA provides remedies that displace Montana state-law remedies.

### A. Conflict Preemption.

■ We conclude that Montana Code Section 33–18–201(1) conflicts with, and is therefore preempted by, FEHBA. Thus, Botsford's claim satisfies the first prong of complete preemption: conflict preemption.

■ FEHBA contains an express preemption clause which reads as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.[8]

Originally, FEHBA's preemption provision was narrower. It specified that only state and local laws and regulations that were "inconsistent with such contractual provisions" were preempted.[9] In 1998, however, after courts had rejected complete preemption based on the old clause, Congress amended FEHBA and adopted the preemption provision set forth above.[10] The new provision closely resembles ERISA's express preemption provision,[11] and prece-

9. *See* 5 U.S.C. § 8902(m)(1) (1997) (amended 1998).

10. *See Rievley ex rel. Rievley v. Blue Cross Blue Shield of Tenn.,* 69 F.Supp.2d 1028, 1033–34 (E.D.Tenn.1999) (collecting cases); Pub.L. No. 105–266, 112 Stat. 2366, § 3(c) (codified as amended at 5 U.S.C. § 8902(m)(1) (2002)).

11. *See* 29 U.S.C. § 1144(a) (2002) ("the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in ... this title"). Note that ERISA's preemption provision contains a section that excepts certain kinds of laws from its scope. *See id.* at § 1144(b)(2)(A) (excepting state laws regulating insurance, banking, or securities from the scope of the preemption

dent interpreting the ERISA provision thus provides authority for cases involving the FEHBA provision.[12] Therefore, in our discussion of conflict preemption, except when we consider the different goals of the two statutes, we refer to ERISA and FEHBA cases interchangeably.

The interpretation of the broad preemption clauses contained in ERISA and FEHBA has evolved from a plain language interpretation in which the statutes would have preempted nearly everything,[13] to a more pragmatic interpretation in which courts seek to preserve the goals of Congress when it passed the statutes, while maintaining state control in traditional fields of state regulation.[14] In recent years, the Supreme Court has limited the broad language of the preemption clause, particularly the term "relates to." A law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with* or *reference to* such a

plan."[15] Each of these terms, "connection with" and "reference to," has its own definition.[16] This case turns on the "connection with" prong, so we proceed to it now.

To determine whether Montana state law has a "connection with" Botsford's FEHBA plan, we must "look both to the 'objectives of the [FEHBA] statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on[FEHBA] plans."[17]

Congress's stated goal when it enacted FEHBA in 1959 was to provide "a measure of protection for civilian Government employees against the high, unbudgetable, and, therefore, financially burdensome costs of medical services through a comprehensive government-wide program of insurance for federal employees ..., the costs of which will be shared by the Government, as employer, and its employ-

provision). FEHBA contains no similar provision.

12. *See, e.g., Roach,* 298 F.3d at 849–50 (noting the similarity of the provisions and citing ERISA cases).

13. *See Spain v. Aetna Life Ins. Co.,* 11 F.3d 129, 131 (9th Cir.1993) (per curiam).

14. *See Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 201 F.3d 1212, 1217–18 (describing various tests developed to interpret the preemption clause after the Supreme Court's decision in *N.Y. State Conf. of Blue Cross & Blue-Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), which made it clear that the goal of such interpretations was to "fulfill[ ] the statutory mandate of broad preemption without intruding upon state laws beyond the intention of Congress and the objectives of ERISA"), *as amended by* 208 F.3d 1170 (9th Cir.), *cert. denied,* 531 U.S. 992, 121 S.Ct. 482, 148 L.Ed.2d 456 (2000); *Roach,* 298 F.3d at 849–50 (stating that " 'relates to' must be read in the context of the presumption that in

fields of traditional state regulation 'the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress' ") (quoting *Travelers,* 514 U.S. at 655, 115 S.Ct. 1671) (alteration in original).

15. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (internal quotation marks omitted) (emphasis added).

16. The "reference to" phrase has a "fairly precise and narrow definition." *Rutledge,* 201 F.3d at 1216. It applies when "a state's law acts immediately and exclusively on [FEHBA] plans ... or where the existence of [FEHBA] plans is essential to the law's operation." *Id.* (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham,* 519 U.S. 316, 335, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)) (internal quotation marks omitted). The "connection with" term is less easily defined. *See id.*

17. *Id.* (quoting *Dillingham,* 519 U.S. at 325, 117 S.Ct. 832).

ees."[18] Thus, Congress wished to create a cost-efficient, comprehensive form of medical insurance for federal employees. It also wished to achieve uniform administration of FEHBA plans.[19] To achieve these ends, Congress created the Office of Personnel Management (OPM), and vested it with the power to contract with private insurers on behalf of federal employees and to promulgate regulations to enforce the statutory scheme.[20]

In light of the above goals, courts have held that FEHBA preempts disputes over a "denial of benefits" and "the nature or extent of coverage for benefits."[21] The application of different state standards would disrupt the nationally uniform administration of benefits which FEHBA provides. Such disruption would increase administrative costs and, ultimately, increase the cost of health care to federal employees and the Government. Thus, application of state laws in cases involving denials of or disputes over benefits would undermine congressional intent.

A dispute over benefits—precisely the kind of dispute that FEHBA preempts— underlies Botsford's claim. Botsford as-serts that Blue Cross did not pay him the amount to which he was entitled under his FEHBA plan. "[A]n assertion that the plan failed to live up to its contractual duty in ways that [state] law would deem appropriate" is, at its root, "a demand for contractual benefits that were not realized."[22] Thus, although Botsford stated his claim as a breach of state law, it really amounts to an alternative method of remedying a contractual breach.[23]

As Botsford's claim centers on a dispute over the amount of benefits he received, his case differs materially from cases such as *Roach v. Mail Handlers Benefit Plan, CNA*[24] and *Abraham v. Norcal Waste Systems, Inc.*[25] In those cases, the dispute did not revolve around a breach of the plan in question.

In *Roach,* the dispute centered on the negligent provision of medical care.[26] There was no dispute over the fact that the plaintiff was entitled to, and had received, FEHBA benefits. The only question was whether medical personnel had engaged in medical malpractice.[27] Thus, the argument in *Roach* was not over what benefits were due, but over whether

---

18. H.R. REP. No. 86–957, at 1 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2913, 2914.

19. *See Hayes v. Prudential Ins. Co. of Am.,* 819 F.2d 921, 925 (9th Cir.1987) (stating that one of FEHBA's long-recognized objectives is to "ensure uniformity in the administration of FEHBA benefits").

20. *See* 5 U.S.C. § 8902(a) (power to contract); 5 U.S.C. § 8913(a) (power to promulgate necessary regulations).

21. *Roach,* 298 F.3d at 850; *Hayes,* 819 F.2d at 926 (internal quotation marks omitted).

22. *Rievley,* 69 F.Supp.2d at 1036 (internal quotation marks omitted) (discussing tort claim).

23. *Cf. Hayes,* 819 F.2d at 926 (holding preempted a "[t]ort claim[ ] arising out of the manner in which a benefit claim is handled" because such claims are "not separable from the terms of the contract"). Indeed, given Montana's allowance for far more extensive damages than those provided under FEHBA, one can understand why a plaintiff, or his attorney, might wish to pursue this alternative remedy. *Compare* MONT. CODE ANN. § 27–1–220 (2002) (allowing punitive damages) *with* 5 C.F.R. § 890.107(b)-(c) (2001) (limiting recovery to "a court order directing OPM to require the carrier to pay the amount of benefits in dispute").

24. 298 F.3d 847.

25. 265 F.3d 811.

26. 298 F.3d at 850–51.

27. *Id.*

medical personnel providing the benefits received had acted negligently. The FEHBA plan was thus involved only tangentially.[28]

In *Abraham*, the plaintiffs had unwittingly traded stock for unsecured notes in the defendant corporation.[29] They sued the defendant for fraud after it defaulted on the notes.[30] Although the defendant was also plaintiffs' employer and the administrator of the ERISA plan, ERISA did not preempt their fraud claims because those claims did "not remotely concern" ERISA.[31]

Thus, the plaintiffs' claims in *Roach* and *Abraham* were independent of their FEHBA and ERISA plans. The disputes in those cases, in marked contrast to this one, had nothing to do with disputes over benefits or coverage. Because the dispute in this case is, at its root, a dispute over benefits, conflict preemption applies. Thus, Botsford's claim satisfies the first prong of complete preemption, conflict preemption.[32] We now turn to the second prong: displacement of remedies.

### B. *Displacement of Remedies.*

In addition to meeting the first prong of complete preemption, conflict preemption, we conclude that Botsford's claim meets the second prong, displacement, as well. For the following reasons, FEHBA displaces the state-law remedies Botsford seeks with federal remedies.

■ Traditionally, courts considering whether a federal statute displaces state remedies have examined a statute's civil enforcement scheme and its jurisdictional statement, as well as the legislative history surrounding the statute, to determine if Congress intended to displace state remedies with federal remedies.[33] Thus, although this circuit has never before considered FEHBA displacement, we follow a well-traveled path in considering it now.

■ FEHBA's civil enforcement provisions are complex. Although the statute does not detail the methods of dispute resolution or the precise remedies available under FEHBA, it vested OPM with the power to promulgate necessary regulations.[34] Moreover, Congress amended FEHBA to vest OPM with the power to compel a carrier to pay a beneficiary when OPM resolves a dispute over benefits in the beneficiary's favor.[35] The legislative history surrounding the amendment suggests that Congress wished to allow for the resolution of FEHBA disputes without resort to the courts.[36]

**28.** *Id.* at 851.

**29.** *Abraham*, 265 F.3d at 817.

**30.** *Id.* 817–18.

**31.** *Id.* at 821.

**32.** *Cf. Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 817–18 (9th Cir.1992) (holding that ERISA preempts Mont. Code Ann § 33–22–508, which provides for the conversion of group health benefits to individual benefits).

**33.** *See, e.g., Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (analyzing displacement under ERISA); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213–21, 105 S.Ct. 1904, 85 L.Ed.2d

206 (1985) (analyzing displacement under the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA) (2002)).

**34.** 5 U.S.C. § 8913(a).

**35.** 5 U.S.C. § 8902(j).

**36.** *See* H.R. Rep.No. 93–459, at 2–3 (1973) (describing the amendment as making "all final determinations by the Commission on claim disputes ... binding upon the carrier involved"); *id.* at 7 (stating that the amendment was designed to change the current law, which "forced [an employee with a meritorious claim] into the courts if he is to recover his judgment").

OPM has created a detailed administrative enforcement scheme for resolving disputes over FEHBA benefits. Pursuant to the regulatory scheme, a beneficiary must first submit a dispute over benefits to the carrier and then to OPM before seeking judicial review.[37] Moreover, beneficiaries may only name OPM, not the carrier, in a suit, and "recovery ... [is] limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."[38] Of course, carriers may be punished in other ways: pursuant to statute, OPM may decline to contract with recalcitrant carriers when the annual renegotiation of contracts occurs.[39]

The existence of a detailed administrative enforcement scheme, coupled with Congress's decision to vest OPM with the power to enforce remedies, weigh on the side of finding that FEHBA remedies displace state-law remedies. However, other factors still must be considered. Accordingly, we turn to the second factor to be considered: FEHBA's jurisdictional statement.

FEHBA contains a narrower jurisdictional statement than either ERISA or the LMRA, two statutes that courts have often held displace state remedies.[40] FEHBA's jurisdictional statement reads:

> The district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter.[41]

Thus, FEHBA provides federal courts with jurisdiction solely over suits against the United States. In contrast, ERISA and the LMRA contemplate a greater number of defendants.[42] ERISA's jurisdictional statement, which closely resembles the LMRA's jurisdictional statement, reads as follows:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section [providing for awards of benefits due] in any action.[43]

Thus, ERISA and the LMRA create federal jurisdiction over various parties, and various defendants, not merely the United States.

FEHBA's narrower statement of jurisdiction might, at first glance, seem to weigh against displacement. When considered in the context of the entire statute and its purposes, however, it is clear that FEHBA's jurisdictional statement is as broad as it can be. Thus, the jurisdictional statement ultimately weighs in favor of displacement.

We conclude that Congress intended to limit the defendant in suits involving disputes over FEHBA benefits to the United States. Allowing suits against carriers would undermine the federal scheme in two ways. First, it would interfere with the uniform administration of FEHBA plans because it would create an alternative mechanism for enforcing FEHBA-cre-

---

**37.** 5 C.F.R. §§ 890.105(a)(1), 890.107(d)(1).

**38.** 5 C.F.R. § 890.107(b)-(c).

**39.** *See* 5 U.S.C. § 8902(e).

**40.** *See, e.g., Metro. Life,* 481 U.S. at 64–66, 107 S.Ct. 1542 (ERISA); *Allis–Chalmers,* 471 U.S. at 213–17, 220–21, 105 S.Ct. 1904 (LMRA).

**41.** 5 U.S.C. § 8912.

**42.** 29 U.S.C. § 1132(f) (2002); 29 U.S.C. § 185(a) (LMRA).

**43.** 29 U.S.C. § 1132(f).

ated rights. This would weaken OPM's authority to interpret FEHBA and its own contracts and would create a patchwork of state regulations overlaying federal FEHBA contracts.[44] Second, allowing suits against carriers in state court would inevitably drive up the cost of FEHBA health insurance by increasing carriers' costs. This is particularly true when, as in this case, state law allows for more extensive monetary damages than does FEHBA.[45]

A fundamental difference between ERISA and FEHBA illustrates the need to limit jurisdiction over suits involving FEHBA benefits more extensively than suits involving ERISA benefits. ERISA governs health plans meeting certain characteristics provided by any number of private employers;[46] FEHBA involves only one employer: the United States. Moreover, no agency of the United States administers ERISA plans; private employers may administer their own ERISA plans or may contract for administration of plans from an independent company.[47] In contrast, OPM administers all FEHBA plans. Thus, ERISA allows beneficiaries to sue employers or plan administrators, and its jurisdictional provision does not specify a precise defendant.[48] In contrast, FEHBA allows beneficiaries to sue the only employer and plan administrator involved in FEHBA: the United States.

In light of the facts that FEHBA involves only one employer, the United States, and the United States contracts with a multiplicity of carriers and has millions of employees, imposing a uniform administrative scheme makes sense. Administering the many contracts between OPM and carriers uniformly, and resolving disputes over benefits in a procedurally regular manner, simplifies FEHBA administration. This, in turn, furthers the congressional goals of uniform administration and cost-savings underlying FEHBA.[49] Requiring beneficiaries to exhaust administrative remedies before proceeding to court, and then to sue the agency that conducted the administrative actions, reinforces the importance and increases the efficiency of the administrative scheme.

Thus, we conclude that Congress intended to limit suits over benefits under a FEHBA plan to only one defendant: the United States. The federal remedies provided to aggrieved federal employees under the regulatory scheme are the only intended remedies under FEHBA; therefore, the federal remedies displace state remedies. Our consideration of the last factor in displacement analysis, legislative history, supports this conclusion.

As discussed previously, the legislative history surrounding Congress's grant of

**44.** Cf. *Allis–Chalmers,* 471 U.S. at 219–20, 105 S.Ct. 1904 (describing the problems with allowing a plaintiff to choose between a state court remedy and a federally arbitrated remedy under a collective bargaining agreement); *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.,* 187 F.3d 1045, 1054 (9th Cir.1999) (noting that ERISA preemption does not occur if "[t]he state law ... does not create an alternative enforcement mechanism for securing benefits under the terms of ERISA-covered plans").

**45.** *Compare* Mont. Code Ann. § 27–1–220 (allowing punitive damages) *with* 5 C.F.R. § 890.107(b)-(c) (limiting recovery to "a court

order directing OPM to require the carrier to pay the amount of benefits in dispute").

**46.** *See* 29 U.S.C. § 1003 (2002).

**47.** *See, e.g., Bui v. AT & T,* 310 F.3d 1143, 1146 (9th Cir.2002) (employer acting as administrator); *Bast v. Prudential Ins. Co. of Am.,* 150 F.3d 1003, 1005 (9th Cir.1998) (insurance company acted as administrator for private employer).

**48.** *See* 29 U.S.C. § 1132(f).

**49.** *See* H.R. Rep. No. 86–957, at 1 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2913, 2914; *Hayes,* 819 F.2d at 925.

enforcement power to OPM supports the proposition that Congress wished to obviate the need for beneficiaries to resort to the courts to recover on meritorious claims.[50] In addition, legislative history from the amendment of FEHBA's preemption clause strongly supports congressional intent to create complete preemption, which includes displacement.[51] The House Report that accompanied the amendment stated, in relevant part:

> This amendment confirms the intent of Congress (1) that FEHB program contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) *completely displace* State or local law relating to health insurance or plans.[52]

The timing of Congress's decision to amend FEHBA's preemption clause to make it similar to ERISA's further supports complete preemption. Congress amended the statute after numerous courts had found that FEHBA did not completely preempt state laws, but ERISA did.[53] Thus, Congress replaced FEHBA's original preemption clause with ERISA's. This implies the intent to have FEHBA completely preempt state laws relating to health insurance or plans just as ERISA does.

Thus, we conclude that federal remedies under FEHBA displace state remedies under Montana Code Section 33–18–201(1). Accordingly, Botsford's claim meets both requirements for complete preemption: it conflicts with federal law, and it seeks remedies that are displaced by federal remedies. Because we conclude that a federal statute completely preempts Botsford's claim, we need not address Blue Cross's alternative argument: that federal common law preempts his claim.

## IV. CONCLUSION

We reverse. FEHBA completely preempts Botsford's only remaining claim. Thus, Botsford's claim arises under federal law, and the district court had jurisdiction. In light of our conclusion that FEHBA conflicts with the state law in question, we remand with instructions to dismiss Botsford's suit with prejudice on the ground that FEHBA preempts it.

REVERSED and REMANDED with instructions to DISMISS WITH PREJUDICE.

---

**50.** *See* H.R. Rep. No. 93–459, at 2–3, 7 (1973).

**51.** *See Rievley*, 69 F.Supp.2d at 1033–34; *but see Ramirez v. Humana, Inc.*, 119 F.Supp.2d 1307, 1312–13 (M.D.Fla.2000) (arguing that legislative history of preemption clause does not support displacement, only conflict preemption).

**52.** H.R. Rep. No. 105–374 at 16 (1997), *reprinted in* 1997 WL 694591 (Leg.Hist.) (emphasis added). For a complete discussion of the legislative history of the amendment to FEHBA's preemption clause, *see Rievley*, 69 F.Supp.2d at 1034.

**53.** *See Rievley*, 69 F.Supp.2d at 1033.