In re: WESTERN STATES WHOLE-SALE NATURAL GAS ANTI-TRUST LITIGATION,

And all Related Cases.

Team Design et. al. Plaintiffs,

v.

Reliant Energy, Inc., et. al., Defendants.

Shanghai 1930 Restaurant Partners, L.P., Plaintiff,

v.

Encana Energy Services, Inc. et. al., Defendants.

A.L. Gilbert Co., Plaintiff,

v.

Coral Energy Resources, L.P., et. al., Defendants,

Oberti Wholesale Foods, Inc., Plaintiff,

v.

Encana Energy Services, Inc., et al., Defendants.

David C. Brown, Plaintiff,

v.

Encana Energy Services, Inc., et. al., Defendants.

Laurence Uyeda, et al., Plaintiffs,

v.

Centerpoint Energy, Inc., et al., Defendants.

Craig Podesta, Plaintiff,

v.

Encana Energy Services, Inc., et al., Defendants.

Vittice Corporation, et al., Plaintiffs,

v.

Encana Corporation, et al., Defendants.

Mark and Susan Benscheidt,
et al., Plaintiffs,

v.

AEP Energy Services, Inc.,
et al., Defendants.

City of Los Angeles, Plaintiff,

v.

Reliant Energy Services, Inc.,
et al., Defendants.

Nos. MDL 1566, CVS031431PMP, CVS031432PMP, CVS031433PMP, CVS031434PMP, CVS031435PMP, CVS031436PMP, CVS031438PMP.

United States District Court,
D. Nevada.

Nov. 18, 2004.

See, also, 346 F.Supp.2d 1143, 2004 WL 2725125; 290 F. Supp.2d 1376.

Walter J. Lack, Engstrom, Lipscomb & Lack, Los Angeles, CA, for Haleema Silverman, Michael Silverman, Lynette Stevenson. Tom Stevenson, Team Design dba Timothy Engeln, Inc.

R. Alexander Saveri, Saveri & Saveri, Inc., San Francisco, CA, for Shanghai 1930 Restaurant Partners, L.P.

Clinton P. Walker, Damrell, Nelson, Schrimp, Pallios, Pacher & Selva, Modesto, CA, for A.L. Gilbert & Co.

Daniel J. Mulligan, Jenkins & Mulligan, San Francisco, CA, for Oberti Wholesale Foods, Inc.

William H. Parish, Parish & Small, Stockton, CA, for Craig Podesta.

Dennis Stewart, Hulett Harper Stewart IXP, San Diego, CA, for Texas–Ohio Energy, Inc.

Daniel C. Girard, Girard Gibbs & De Bartolomeo LLP, San Francisco, CA, for David C. Brown.

Reginald Terrell, Terrell Law Group, Richmond, CA, for Lois The Pie Queen.

Barry R. Himmelstein, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, for H & M Roses, Inc.; Uyeda, Laurence.

Brad N. Baker, Baker, Burton & Lundy, Hermosa Beach, CA, for Team Design.

G. Mark Albright, Albright, Stoddard, Warnick & Palmer, P.C., Las Vegas, NV, MDL 1566 Liason Counsel Plaintiffs.

Joseph W. Cotchett, Cotchett, Pitre, Simon & Mccarthy, Burlingame, CA, for City of Los Angeles Department of Water and Power.

Gregory J.Copeland, Baker & Botts, Houston, TX, for Reliant Energy Services, Inc., Reliant Energy, Inc., Reliant Resources, Inc. and Kathleen Zanchoni.

Joel B. Kleinman, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for Duke Energy Corporation, Duke Energy Field Services, Inc., Duke Energy North

America, LLC and Duke Energy Trading and Marketing, L.L.C.

Richard P. Levy, Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, for Sempra Energy.

Robert A. Sacks, Sullivan & Cromwell LLP, Los Angeles, CA, for EnCana Corp. and WD Energy Services, Inc.

Mark E. Haddad, Sidley Austin Brown & Wood LLP, Los Angeles, CA, for CMS Energy Corporation.

Diane E. Pritchard, Morrison & Foerster LLP, San Francisco, CA, for El Paso Corporation.

Joshua D. Lichtman, Fulbright & Jaworski, LLP, Los Angeles, CA, for Coral Energy Resources, L.P.

John L. Hendricks, Akin Gump Strauss Hauer & Feld LLP, Dallas, TX, for Centerpoint Energy Inc.

Alan Yudkowsky, Stroock & Stroock & Lavan LLP, Los Angeles, CA, for Sempra Energy Trading Corp.

Jonathan Abram, Hogan & Hartson LLP, Washington, DC, for American Electric Power, Inc.

Douglas Tribble, Pillsbury Winthrop LLP, San Diego, CA, for Dynegy Inc. and West Coast Power LLC.

Michael C. Lieb, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for Xcel Energy, Inc.

### ORDER

PRO, Chief Judge.

## I. BACKGROUND

These cases arise out of the California energy crisis of 2000–2001. During that time, the California energy and natural gas markets became mutually dysfunctional, and, feeding off each other spiraled into a statewide energy crisis. Amendments to Blanket Sales Certificates, 68 Fed.Reg. 66323, 66325 (Nov. 17, 2003) (to be codified at 18 C.F.R. § 284.288). The Federal Energy Regulatory Commission ("FERC") undertook a fact finding investigation of the market crisis in which they concluded, "[S]pot gas prices rose to extraordinary levels, facilitating the unprecedented price increase in the electricity market." *Id.* FERC concluded the dysfunctions in the natural gas market stemmed from efforts to manipulate price indices compiled by private trade publications, including reporting of false data and wash trading.[1]

The above actions were originally filed in Superior Courts in the State of California, and were removed by Defendants to United States District Courts for the Central, Northern, Southern, and Eastern Districts of California. On November 6, 2003, January 7, 2004, and April 5, 2004, the Judicial Panel on Multidistrict Litigation entered Transfer Orders pursuant to 28 U.S.C. § 1407 centralizing the foregoing actions in this Court for coordinated or consolidated pretrial proceedings.

This Court is familiar with the factual background of these cases, as it stems from the California Energy Crisis that generated *In re Cal. Retail Natural Gas and Elec. Antitrust Litig.*, 170 F.Supp.2d 1052 (D.Nev.2001). In that case, this Court presided over multidistrict litigation that addressed essentially identical claims to the litigation at issue here. In that

---

1. "A 'wash trade' is a prearranged pair of trades of the same good between parties, resulting in no net change in ownership. It creates an illusion of a more liquid and active market and it helps bolster false trading revenue figures." Federal Energy Regulatory Commission, *Commission Revoked Enron's Market–Based Rate Authority, Blanket Gas Certificates Terminated,* (June 25, 2003), *at* http://www.ferc.gov/p ress–room/pr–ar-chives/2003/2003–2/06–25–03_enron.pdf.

case, Plaintiffs', natural gas consumers, filed actions in state court claiming violations of California's unfair competition and anti-trust laws. Defendants removed to federal court claiming federal law preempted the plaintiffs' state law claims. This Court remanded the cases to state court, finding that the Federal Power Act ("FPA") did not preempt California state law claims of antitrust violations and unfair competition. *See id.* at 1055.

In this litigation, Plaintiffs sue Defendants in multiple districts in the State of California seeking to recover damages on behalf of natural gas rate payers. In all Complaints, Plaintiffs allege Defendants engaged in anti-competitive activities with the intent to manipulate and artificially increase the price of natural gas for consumers.[2] Plaintiffs allege Defendants' actions were in violation of the State of California's Cartwright Act (Cal. Bus. & Prof.Code §§ 16720 et. seq.), the California Unfair Competition Laws (Cal. Bus. & Prof.Code §§ 17200 et. seq.), and the common law.[3]

Presently before this Court are the Motions to Remand of Plaintiffs Shanghai 1930 Restaurant Partners, L.P. ("Shanghai 1930"), A.L. Gilbert Company ("Gilbert"), Oberti Wholesale Foods, Inc. ("Oberti"), David C. Brown ("Brown"), Laurence Uyeda, et al. ("Uyeda"), Craig Podesta ("Podesta"), and Mark and Susan Benscheidt ("Benscheidt").[4] Plaintiffs Team Design, et al. ("Team Design") filed a Notice of Joinder in Plaintiffs Laurence Uyeda's and H & M Roses, Inc.'s Motion for Remand (CV–S–03–1431, Doc. # 8) on January 9, 2004. In addition, pending transfer to this Court, Plaintiff Vittice Corporation ("Vittice") filed a Notice of Joinder and Joinder in Motions for Remand of Cases to State Court (CV–S–04–0532–PMP(PAL), Doc. # 10) and incorporated fully the arguments set forth in Memoranda and Joint Reply Memoranda in support of the Motions to Remand Case to State Court filed by Plaintiffs Shanghai 1930, Gilbert, Oberti, Brown, Team Design and Uyeda.

Defendants Reliant Energy Inc., et al. ("Reliant"), Encana Energy Services, Inc.,

---

2. All Plaintiffs allege Defendants engaged in conspiratorial and anti-competitive conduct. (*Team Design* Compl. at ¶¶ 2, 12; *Shanghai 1930* Compl.; *Gilbert* Compl. at ¶ 2; *Oberti* Compl. at ¶ 1; *Brown* Compl. at ¶ 1; *Uyeda* Compl. at ¶¶ 3–4; *Podesta* Compl.; *City of Los Angeles* Compl. at ¶¶ 1–3; *Vittice* Compl. at ¶ 1; *Benscheidt* Compl. at ¶¶ 78–83.)

3. All Plaintiffs brought claims under California's Cartwright Act (Cal. Bus. & Prof.Code §§ 16720 et. seq.). (*Team Design* Compl. at ¶¶ 37–47; *Shanghai 1930* Compl.; *Gilbert* Compl. at ¶¶ 44–49; *Oberti* Compl. at ¶¶ 40–48; *Brown* Compl. at ¶¶ 43–50; *Uyeda* Compl. at ¶¶ 91–103; *Podesta* Compl.; *City of Los Angeles* Compl. at ¶¶ 107–112; *Vittice* Compl. at ¶¶ 39–46; *Benscheidt* Compl. at ¶ 1.) All Plaintiffs except for the City of Los Angeles brought claims under California's Unfair Competition Act (Cal. Bus. & Prof.Code §§ 17200 et. seq.). (*Team Design* Compl. at ¶¶ 48–64; *Shanghai 1930* Compl.; *Gilbert*

Compl. at ¶¶ 50–55; *Oberti* Compl. at ¶¶ 49–54; *Brown* Compl. at ¶¶ 51–56; *Uyeda* Compl. at ¶¶ 104–08; *Podesta* Compl.; *Vittice* Compl. at ¶¶ 47–51; *Benscheidt* Compl. at ¶ 1.) Plaintiff City of Los Angeles also asserts common law Breach of Contract (Compl. ¶¶ 91–95), breach of fiduciary duty (Compl. ¶¶ 96–103), and unjust enrichment claims (Compl. ¶¶ 104–06). City of Los Angeles also asserts claims under the False Claims Act (Ca. Gov.Code § 12650). (Compl. ¶¶ 113–117.)

4. Shanghai 1930, CV–S–03–1433–PMP(PAL) Motion to Remand (Doc. # 9); Gilbert, CV–S–03–1434–PMP(PAL) Motion to Remand (Doc. # 12); Oberti, CV–S–03–1435–PMP(PAL) Motion to Remand (Doc. # 12); Brown, CV–S–03–1436–PMP(PAL) Motion to Remand (Doc. # 14); Uyeda, CV–S–03–1438–PMP(PAL) Motion to Remand (Doc. # 6); Podesta, CV–S–04–0186–PMP(PAL) Motion to Remand (Doc. # 5); Benscheidt, CV–S–04–0653–PMP(PAL) Motion to Remand (Doc. # 16).

et. al. ("Encana Energy"), Coral Energy Resources, L.P., et al. ("Coral"), Centerpoint Energy, Inc., et al. ("Centerpoint"), and Encana Corporation, et al. ("Encana Corporation"), filed a Joint Consolidated Opposition to Motion for Remand (CV–S–03–1431–PMP(PAL), Doc. # 20) on February 6, 2004.

Plaintiffs Team Design and Uyeda filed a Consolidated Reply Brief in Support of Motions for Remand (CV–S–03–1431–PMP(PAL), Doc. # 26) on March 5, 2004. In addition to the Consolidated Reply Brief, Team Design and Uyeda filed a Request For Judicial Notice in Support of Plaintiffs' Consolidated Reply Brief (*Id.*). Defendants filed an Opposition to the Request for Judicial Notice (CV–S–03–1431–PMP(PAL), Doc. # 33) on March 23, 2003.

On April 2, 2004, this Court held a hearing on the aforementioned motions (CV–S–03–1431–PMP (PAL), Doc. # 38). The transcript was produced and placed in the record (CV–S–03–1431–PMP (PAL), Doc. # 44) on April 29, 2004.

In anticipation of pending transfer to this Court, Plaintiff City of Los Angeles, Department of Water and Power ("Los Angeles") filed a Notice of Joinder in Motions for Remand to State Court (CV–S–03–1431, Doc. # 29) on March 19, 2004. *City of Los Angeles v. Reliant Energy Servs., Inc., et al.* was transferred to this Court under 28 U.S.C. § 1407 and notice was filed on April 5, 2004 (CV–S–04–1431, Doc. # 39). For the reasons set forth below, the Court will grant Plaintiffs' Motions for Remand.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have limited jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. The defendant bears the burden of establishing federal jurisdiction over a suit filed in state court. *Harris v. Provident Life Acc. Ins. Co.,* 26 F.3d 930, 932 (9th. Cir.1994). A strong presumption exists against removal. *Gaus v. Miles,* 980 F.2d 564, 566 (9th. Cir.1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). Removal statutes are to be strictly construed in favor of remand to the state courts. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Where a case is improperly removed to the federal courts, remand to the original state court is the proper remedy. *See* 28 U.S.C. § 1447©.

## III. DISCUSSION

Plaintiffs argue that, as masters of their complaint, they have chosen to bring their claims in California state court under California law, and that the action should be remanded. Defendants respond that even though Plaintiffs pled state law based claims, the Natural Gas Act ("NGA") vests the federal courts with exclusive jurisdiction over a lawsuit seeking to enforce any liability or duty created by the NGA, including any claim involving market manipulation. Defendants argue that state court jurisdiction is preempted because the NGA vests exclusive jurisdiction in FERC, and under the doctrines of complete preemption and conflict preemption.

United States district courts are courts of limited jurisdiction. *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Where diversity of citizenship between the parties does not exist, as is the case in regards to most

cases in this MDL action,[5] a federal question must be present; that is, the action must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The presence or absence of a federal question is determined by the well-pleaded complaint rule. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). The "well-pleaded complaint" rule establishes the basic principle identifying the boundaries of federal question jurisdiction of the federal district courts. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Under the "well-pleaded complaint" rule the plaintiff is the master of his or her complaint; "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425. Plaintiffs are not required to assert federal claims, even if they exist. *Id.* "Federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*

■ "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Id.* The federal question must be an essential element of the plaintiff's cause of action to establish federal question jurisdiction. *Gully,* 299 U.S. at 112,

57 S.Ct. 96. A federal defense is not a sufficient basis to establish removal jurisdiction. *Franchise Tax Board,* 463 U.S. at 10, 103 S.Ct. 2841 (citing *Tenn. v. Union & Planters' Bank,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894)). As this Court has noted previously, "as master of their Complaints, Plaintiffs may defeat removal by choosing not to plead independent federal claims." *In re Cal. Retail Natural Gas and Elec. Antitrust Litig.,* 170 F.Supp.2d at 1056 (citing *ARCO Envtl. Remediation v. Dep't of Health and Envtl. Quality,* 213 F.3d 1108, 1114 (9th Cir.2000)). This does not mean, however, that Plaintiffs may defeat removal by "omitting to plead necessary federal questions in a complaint." *ARCO Envtl. Remediation v. Dep't of Health and Envtl. Quality,* 213 F.3d 1108, 1114 (9th Cir.2000). If a federal question is an essential element of the relief sought, Plaintiffs may not avoid federal jurisdiction by choosing to ignore the federal question in the complaint. *Id.*

## A. Exclusive Jurisdiction

Defendants contend they properly removed these cases because this Court has exclusive jurisdiction under the NGA, 15 U.S.C. § 717u:

> The District Courts of the United States and the United States Courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder ...

5. All but one of the actions have been removed to federal court on the basis of federal question jurisdiction. Defendants in *A.L. Gilbert Co. v. Coral Energy Resources, L.P.,* CV–S–03–1434–PMP(PAL), asserted removal jurisdiction based on both diversity and federal question jurisdiction. This Court will address the Motion for Remand based on Diversity Jurisdiction in a separate order.

*Id.* Relying heavily on the Ninth Circuit case *Sparta Surgical,* Defendants argue that the exclusive jurisdiction granted by the NGA completely preempts state courts from hearing Plaintiffs' claims. *See Sparta Surgical v. Nat'l Assoc. of Sec. Dealers,* 159 F.3d 1209 (9th Cir.1998). Plaintiffs respond that the exclusive jurisdiction provision of section 717u does not establish jurisdiction. Rather, Plaintiffs argue that had Congress intended to completely preempt the entire field of natural gas regulation, Congress would have included more definitive language in the jurisdictional provision.

■ Where relief is sought for violation of a federal statute in which Congress has provided for exclusive federal jurisdiction, Plaintiffs may not avoid federal jurisdiction by artfully pleading state law claims. *Sparta Surgical,* 159 F.3d at 1212. Exclusive jurisdiction however does not confer original jurisdiction. " 'Exclusive jurisdiction' is given the federal courts but it is 'exclusive' only for suits that may be brought in the federal courts. Exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction because of which state courts are excluded." *Pan Am. Petroleum Corp. v. Superior Court of Del. In and For New Castle County,* 366 U.S. 656, 664, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) (citing *Pratt v. Paris Gaslight & Coke Co.,* 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1897)). Exclusive jurisdiction is not original jurisdiction. *Id.* Rather, for this Court to exercise exclusive jurisdiction, this Court independently must have original jurisdiction. *See id.*

■ Defendants nonetheless argue this Court has exclusive jurisdiction just as the district court had in *Sparta Surgical.* In *Sparta Surgical,* the National Association of Securities Dealers de-listed and suspended trading of Sparta Surgical's Corporate Stock. *Sparta Surgical,* 159 F.3d at 1211. Sparta brought an action in California state court alleging state common law claims and defendants removed to federal court. On appeal, the Ninth Circuit held that "[b]ecause federal courts are vested by 15 U.S.C. § 78aa with the exclusive jurisdiction over actions brought 'to enforce any liability or duty' created by exchange rules, the district court properly determined that subject matter jurisdiction existed at the time of removal over Sparta's claims arising from the breach of association rules." *Id.* at 1211. The Exchange Act statement of jurisdiction, 15 U.S.C. § 78aa, is identical to the NGA statement of jurisdiction.[6]

Contrary to Defendant's position, in *Sparta Surgical,* it was not the exclusive jurisdiction statement that created jurisdiction, but the fact that the plaintiffs' claims in that case were based on National Association of Securities Dealers regulation, a federal regulation. *See Sparta Surgical,* 159 F.3d at 1212. Here, if Plaintiffs had based their claims on the NGA, or to enforce any liability or duty created by the NGA, then this Court would have original and exclusive jurisdiction. In these cases, Plaintiffs intentionally elected not to do so. Rather, Plaintiffs have predicated their claims on state anti-trust laws, of which the federal courts do not have original jurisdiction. Consequently, as this Court does not have original jurisdiction under

---

**6.** 15 U.S.C. § 78aa provides:

The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

the NGA, the exclusive jurisdiction provision, section 717u, does not provide a basis for removal.

## B. Preemption: The ARCO Tests

A case presenting a federal question on the face of the well-pleaded complaint is within the federal court's jurisdiction, and is therefore removable. 28 U.S.C. §§ 1331, 1441. "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select groups of claims is necessarily federal in character." *Metro. Life,* 481 U.S. at 63–64, 107 S.Ct. 1542. Whether Plaintiffs' claims are completely pre-empted requires an analysis of whether the claims "arise under" federal law. *See In re Gas,* 170 F.Supp.2d at 1056. In *ARCO Envtl. Remediation v. Dep't of Health and Envtl. Quality,* the Ninth Circuit outlined three instances in which a cause of action arises under federal law. *Id.* at 1112–13.

> A state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law; (2) where a claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question.

*Id.* at 1114 (internal citations omitted).

Defendants argue that under the *ARCO* tests, Plaintiffs' Complaints, although plead as state-based causes of action, are both completely pre-empted by federal law and in actuality asserting a federal question. Plaintiffs respond that Congress did not intend the NGA to completely pre-empt state antitrust law and that none of Plaintiff's claims depend on the resolution of a federal question, therefore remand is appropriate.

## 1. Complete Preemption

■ Where Congress manifests an intent to occupy an entire regulatory field, any remedy sought outside of the congressional scheme is considered completely preempted. *Metro. Life,* 481 U.S. at 63–64, 107 S.Ct. 1542.

> In the absence of an express statement by Congress that state law is pre-empted, there are two other bases for finding pre-emption. First, when Congress intends that federal law occupy a given field, state law is pre-empted. Second, even if Congress has not occupied the field, state law is nevertheless pre-empted to the extent it actually conflicts with federal law, that is compliance with both state and federal law is impossible.

*Cal. v. ARC Am. Corp.,* 490 U.S. 93, 100–01, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). There is a strong presumption against finding pre-emption where Congress has legislated in a field traditionally occupied by the states. *Id.*

Complete preemption is rare. *ARCO,* 213 F.3d at 1114. In fact, the federal courts have rarely identified legislation which has been found to completely preempt state jurisdiction. *See Caterpillar,* 482 U.S. at 393 n. 8, 107 S.Ct. 2425 (1987) (Labor Management Relations Act); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (Employee Retirement Income Security Act); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 675, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (possession of tribal lands); *Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 410–11, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (Railway Labor Act); *Am. Tel. & Tel. Co. v. Central Office Tel. Inc.,* 524 U.S. 214, 222–25, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) (Federal Communications Act); *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 11, 123

S.Ct. 2058, 156 L.Ed.2d 1 (2003) (National Bank Act).[7]

No federal court has found the Natural Gas Act, the Federal Power Act, or the Natural Gas Policy Act ("NGPA") preempt state regulation of the natural gas industry. *See In re Gas,* 170 F.Supp.2d at 1056. As this Court noted in *In re Natural Gas,* "no such complete preemption language appears in any of the three potentially applicable federal acts-the Federal Power Act, the Natural Gas Act, or the Natural Gas Policy Act." *Id.* (internal citations omitted).

Defendants argue that since this Court last considered this issue in *In re Natural Gas,* the Ninth Circuit and the Supreme Court have "clarified the law on complete preemption in ways that confirm that complete preemption exists here." (Defs.' Joint Consolidated Opp'n to Mot. for Remand 24.) Defendants first point to *Botsford v. Blue Cross and Blue Shield,* in which the Ninth Circuit held the Federal Employee Health Benefits Act ("FEHBA") preempted a state Unfair Trade and Practices Act. 314 F.3d 390, 397–98 (2002). In *Botsford* the Ninth Circuit outlines a two part test defining complete preemption. *Id.* at 393. "To preempt state-law causes of action completely, federal law must both: (1) conflict with state law (conflict preemption) and (2) provide remedies that displace state law remedies (displacement)." *Id.* Defendants argue that because the NGA and the FEHBA are so similar, *Botsford* controls these matters. Plaintiffs argue that *Botsford* addresses

only the limited issue of the FEHBA, and therefore does not apply to these cases.

Nothing in *Botsford* addresses the natural gas industry or field preemption absent an express provision. Therefore *Botsford* does not affect this Court's prior analysis. *Id.* Unlike the NGA, Congress specifically included in FEHBA an express preemption clause:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supercede and preempt any State or local law, or any regulation issues thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). Based on this express preemption clause, the Ninth Circuit found FEHBA conflicted with state law, displaced any state law remedies available, and therefore completely preempted the regulatory field. *Botsford,* 314 F.3d at 393–94.

In enacting the NGA, Congress did not intend to preempt all state action. With the passage of the NGA, "Congress meant to create a comprehensive and effective regulatory scheme, complementary in its operation to those of the states and in no manner usurping their authority." *Panhandle E. Pipe Line Co. v. Pub. Service Comm'n,* 332 U.S. 507, 524, 68 S.Ct. 190, 92 L.Ed. 128 (1947); *see also Northwest Cent. Pipeline Corp. v. State Corp. Comm'n,* 489 U.S. 493, 512, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989). As the Supreme Court noted in *Schneidewind v. ANR*

---

**7.** Defendants argue that *Beneficial Nat'l Bank v. Anderson* demonstrates the Supreme Court's willingness to apply the complete preemption doctrine to new contexts. (Defs.' Joint Consolidated Opp'n to Mot. for Remand 24). In *Beneficial,* the Supreme Court held that the National Bank Act provided the exclusive cause of action for usury claims against national banks and therefore had the

"requisite pre-emptive force to provide removal jurisdiction." *Beneficial Nat'l Bank,* 539 U.S. at 11, 123 S.Ct. 2058. Unlike the National Bank Act, Congress did not demonstrate an express intention in the NGA, the NGPA, or the FPA to pre-empt the regulatory field of natural gas. *Beneficial National Bank* does not change this conclusion. *Id.* at 11, 123 S.Ct. 2058.

*Pipeline Co.,* "of course every state statute that has some indirect effect on rates and facilities of natural gas companies is not pre-empted." 485 U.S. 293, 308, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). In *Schneidewind,* the Supreme Court found a state law requiring public utilities to obtain state approval before issuing long-term securities was in direct conflict with the NGA, and therefore preempted. *Id.* at 294–96, 108 S.Ct. 1145. Unlike *Schneidewind,* California's Unfair Competition and Cartwright Act are not in direct conflict with NGA regulation. The NGA preempts any state law which directly interferes with the regulatory control of natural gas rates. The purpose of California's antitrust laws, prohibiting anti-competitive behavior, is peripheral to the central purpose of the NGA, and therefore is not preempted.

Additionally, the NGA does not displace state remedies · because at the time of Plaintiffs' alleged claims, the NGA did not provide remedies that would displace the state law remedies provided by § 17200 or the Cartwright Act. At the time of Defendants' alleged misconduct, FERC did not have a regulatory structure sanctioning anti-competitive behavior. *See* Amendment to Blanket Sales Certificates, 68 Fed. Reg. 66323. After the deregulation of the natural gas market, FERC confirmed that "the basis of the rate to be negotiated between a willing buyer and seller is a commercial, not regulatory, matter." *Regulations Governing Blanket Marketer Sales Certificates,* 57 Fed.Reg. at 57958. Indeed, it was not until after the events surrounding these claims occurred that

FERC issued extensive regulations regarding anti-competitive behavior. *See Amendment to Blanket Sales Certificates,* 68 Fed.Reg. 66335.[8] Because the NGA is not in conflict with state antitrust laws and does not displace of state law remedies, the NGA does not preempt these state-law causes of action.

## 2. Federal in Character

■ Even if Plaintiffs' claims are not pre-empted by federal law, Defendants argue that the claims are necessarily federal in character and therefore are within this Court's jurisdiction. Plaintiffs insist that their Complaints allege unfair business and anti-competitive practice in violation of state law. Plaintiffs further argue that as masters of their Complaints they have the right to bring their actions under state law, irrespective of any concurrent violation of federal law.

The question is whether the NGA's jurisdictional provisions granting FERC power in regulating natural gas deprive the California state court of jurisdiction over these claims, thereby making Plaintiffs' claims "necessarily federal in character." *See ARCO,* 213 F.3d at 1115. The NGA's jurisdictional section, 15 U.S.C. § 717u, confers on FERC exclusive jurisdiction "of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by or to enjoin any violation of, this chapter, or any rule, regulation, or order thereunder . . . ." The NGA confers exclusive jurisdiction on FERC over the

---

**8.** "The code of conduct rules approved herein would revise the Commission's regulations to require that pipelines that provide unbundled sales service or persons holding blanket marketing certificates adhere to a code of conduct when making gas sales. In addition, the Commission will require blanket sales certificate holders to maintain certain data for a period of three years. The addition of the codes of conduct, retention of date and standards for accuracy are efforts by the commission to ensure the integrity of the natural gas market that remains within its jurisdiction." *Amendment to ·Blanket Sales Certificates,* 68 Fed.Reg. 66335.

transportation and sale of natural gas in interstate commerce. *Schneidewind,* 485 U.S. at 300–01, 108 S.Ct. 1145. Thus, Plaintiffs' claims are necessarily federal claims under § 717u only if they constitute a challenge to the transportation and sale of natural gas in interstate commerce. *See In re Gas,* 170 F.Supp.2d at 1058. In *In re Gas,* this Court clarified the central inquiry in determining whether or not Plaintiffs' claims are "federal in character":

> Whether or not FERC has the exclusive ability to regulate pipeline transportation is not, however, the question here.... *Schneidewind* thus makes clear that the inquiry here should not be the extent of FERC's regulatory powers generally. Instead, the question is whether Plaintiffs' claims, as Plaintiffs have pled them, challenge conduct *within* FERC's exclusive domain.

*Id.* at 1059 (citing *Schneidewind,* 485 U.S. at 293, 108 S.Ct. 1145).

This Court has examined each of the Complaints and finds that Plaintiffs' claims are limited to California state law claims not within FERC's exclusive domain. Among the ten Complaints there are two categories of claims. The *Gilbert, Shanghai 1930, Oberti, Brown, Uyeda, Vittice Corporation,* and *Benschiedt* Complaints all focus on behavior regarding price sharing and manipulation of "spot market" prices, as well as "wash sales." In addition to manipulation of prices and "wash sales," the *Team Design* and *City of Los Angeles* also include allegations of illegal "netting agreements"[9] and "churning."[10] All Complaints focus on the behavior as evidence of conspiratorial conduct in violation of the California Cartwright and Unfair Competition Law. At the time of Defendants' alleged wrongdoing, FERC did not regulate the "spot market"[11] or "wash sales." In fact, the alleged price fixing agreements as well as the alleged false price postings which form the basis of Plaintiffs' Complaints all occurred on privately owned and operated websites, computer programs, and trade publications. Plaintiffs allege that Defendants used unregulated market mechanisms to manipulate the market price of the natural gas industry; Plaintiffs do not allege Defendants manipulated any FERC regulated price index. Furthermore, "FERC's regulatory powers are not so extensive as to imply preemption in the entire field to the exclusion of antitrust claims in particular." *In re Gas,* 170 F.Supp.2d at 1059 (citing *Cal. v. Fed. Power Comm'n,* 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962) ("[T]here is no pervasive regulatory scheme including the antitrust laws that has been entrusted to

9. The term "netting agreements" refers to an agreement between parties to report the sale price of a particular transaction as a whole, averaging the lowest prices and the highest prices, thus creating an appearance of an overall higher market price in natural gas. *See* Federal Energy Regulatory Commission, *Final Report on Price Manipulation in Western Markets: Fact–Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* Docket No. PA02–2–00, II–7 (Mar. 2003).

10. The term "churning" refers to rapid sales and corresponding purchases of product that result in the appearance of an increase in market demand. Federal Energy Regulatory Commission, *Final Report on Price Manipulation in Western Markets: Fact–Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* Docket No. PA02–2–00, II–1 (Mar.2003).

11. The term "spot market" is used to describe a short term market for gas. Federal Energy Regulatory Commission, *Final Report on Price Manipulation in Western Markets: Fact–Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* Docket No. PA02–2–00, II–1 (Mar.2003).

the [Federal Energy Regulatory] Commission.") (internal citations omitted)).

Finally, at the time Plaintiffs filed their Complaints, no private right of action existed under the NGA.[12] *See* 15 U.S.C. § 717; *Gainesville v. Fla. Power Light Co.*, 488 F.Supp. 1258, 1267 (S.D.Fla.1980) ("Although the legislative history indicates that Congress intended to commit the rate-making and other regulatory functions under the Natural Gas Act solely to the Commission, this conclusion does not necessarily imply that once the Commission has determined specific conduct or some general type of conduct to be unlawful there can be no private remedy to enforce those Commission decisions."). As no private right of action existed at the time of Defendants' alleged wrongful conduct, Plaintiffs' claims are brought only under state law. As pled, Plaintiffs' claims do not challenge conduct within FERC's exclusive domain and thus are not federal in character.

In supplemental letter briefing, the parties have addressed the significance of recent Ninth Circuit cases regarding regulatory jurisdiction over the energy market, *Pub. Util. Dist. No. 1 of Gray's Harbor County, Wash. v. IDACOR Inc.*, 379 F.3d 641 (9th Cir.2004) ("Grays Harbor"), *State of Cal. v. FERC*, 383 F.3d 1006 (9th Cir.

2004), and *Pub. Util. Dist. No. 1 of Snohomish County v. Dynegy Power Mktg., Inc.*, 384 F.3d 756 (9th Cir.2004). Plaintiffs argue that *Grays Harbor, Snohomish County*, and *Cal. v. FERC* establish three required elements necessary to support the conclusion that FERC's regulation justifies preemption of state law: 1) a governing federal tariff; 2) individualized pre-market determinations; and 3) periodic rate filings, all of which were absent from the natural gas industry. (*Id.*) Plaintiffs further argue that not one of the three requirements articulated by recent cases is present to justify preemption. Defendants respond that Plaintiffs' claims require them to prove that wholesale natural gas prices were too high, and what the gas prices would have been absent the alleged market manipulation. (Letter, CV–S–03–1431, Doc. # 81.) Therefore, Defendants argue these new cases confirm that the damages elements before this Court necessarily present federal questions of what would the lawful rate under federal law be. (*Id.*)

The recent Ninth Circuit decisions of *Grays Harbor, Snohomish County*, and *Cal. v. FERC* all address the complicated arena of energy regulation governed by the FPA. *See Grays Harbor*, 379 F.3d at 644; *Snohomish County*, 384 F.3d 756, 758, *Cal. v. FERC*, 383 F.3d 1006, slip op.

---

**12.** As discussed previously, no private right of action existed under the NGA until FERC issued Order No. 644, Final Rule Amending Blanket Sales Certificates, in which FERC amended 18 C.F.R. § 284.288(d) to provide for disgorgement. Furthermore, as confirmed in Order No. 644, the new private right of action did not go into effect until after Defendants' alleged wrongful actions, and does not have retroactive effect. *See Amendment to Blanket Sales Certificates*, 68 Fed.Reg. 66335. In a recent press release FERC reaffirmed the prospective application of the new standards set forth in Order No. 644:

In response to petitions for rehearing and clarification of its November 2003 rule, the

Commission reaffirmed the need for the rule, noting that it protects customers in an environment where robust competition provides the economic incentives that may tempt a transmission provider to give its affiliates unduly preferential treatment-behavior that harms customers. The Commission is extending until September 1, 2004, the date for full implementation of the standards of conduct.

Federal Energy Regulatory Commission, Commission Upholds, Clarifies Standards of Conduct Guidelines for Natural Gas and Electric Transactions, http: //www.ferc.gov/press-room/prarchives/2004/2004–2/04–14–04–standards.asp.

at 13125. In *Grays Harbor*, the Ninth Circuit held that FERC has exclusive authority, pursuant to the FPA, to determine the reasonableness of wholesale electricity rates. *Grays Harbor*, 379 F.3d at 647 (quoting *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986)) ("Through the FPA, 'Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction ...' "). *Grays Harbor* affirmed, on grounds of preemption and the filed rate doctrine, the dismissal of a suit brought under Washington state law arising from alleged manipulation of the western energy market. *See id.* at 645–46. The appeal did not present any jurisdictional issues, as federal jurisdiction was uncontested before the district court or the court of appeals. *See id.* at 646.[13] Despite a "market-based" system, the court found FERC's significant control of the energy market was sufficient to preempt state law. *See id.* at 649 ("The fact that the rates at issue in this case are market based does not alter this conclusion. Idaho Power Company's authority to charge market-based rates comes from FERC.... Even in the context of market-based rates, FERC actively regulates and oversees the setting of rates.").

In *Pub. Util. Dist. No. 1 of Snohomish County v. Dynegy Power Mktg., Inc.*, which involved electricity sales on California's PX and ISO markets, the Ninth Circuit framed the issue as follows, "[t]he fundamental question in this case is wheth-er, under the market-based system of setting wholesale electricity rates, FERC is doing enough regulation to justify federal preemption of state laws." *Snohomish County*, 384 F.3d 756, 760. As in *Grays Harbor*, the Court found that despite the transition to a market-based price system, FERC's continuing control of the electricity market was "enough regulation to justify federal preemption of state laws." *Id.* at 760–61.

Defendants argue that because the jurisdictional provisions of the FPA and the NGA are "substantially identical," these recent decisions are conclusive as to whether the NGA preempts state law claims. (Letter, CV–S–03–1431, Doc. # 81.) Although the exclusive jurisdiction provisions of the NGA and the FPA are alike, the markets which they regulate are vastly different. The decisions of *Grays Harbor*, *Snohomish County*, and *Cal. v. FERC* do not affect the outcome of the cases pending in front of this Court, because they do not address the unique context of the natural gas market. Unlike the electricity market, where FERC reviews and approves detailed tariffs filed by the PX and the ISO, at the time of the alleged misconduct in the natural gas market FERC would grant blanket approval for most sales.[14] *See* 18 C.F.R. § 284.402(a). Because Congress and FERC have treated the natural gas and electricity markets differently, a decision that FERC regulations preempt state law claims in the elec-

---

13. The action in *Grays Harbor* was removed on diversity grounds. At issue was the District Court's decision to dismiss because the utility's claims were preempted by FERC regulation. *See Grays Harbor*, 379 F.3d at 644.

14. *See* 18 C.F.R. § 284.402(a):
    Any person who is not an interstate pipeline is granted a blanket certificate of public convenience and necessity pursuant to section 7 of the Natural Gas Act authorizing the certificate holder to make sales for resale at negotiated rates in interstate commerce of any category of gas that is subject to the Commission's Natural Gas Act jurisdiction. A blanket certificate issued under Subpart L is a certificate of limited jurisdiction which will not subject the certificate holder to any other regulation under the Natural Gas Act jurisdiction of the Commission ...

tricity markets does not necessarily men similar claims in the natural gas markets are preempted.

Additionally, the issues presented in *Grays Harbor*-field preemption, conflict preemption, and the filed-rate doctrine-are defenses on the merits, not jurisdictional doctrines. *Metro. Life*, 481 U.S. at 63, 107 S.Ct. 1542 ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of the well-pleaded complaint, and therefore, does not authorize removal to federal court.") Unlike the doctrine of complete preemption, which may serve as a basis of for federal jurisdiction, field preemption does not provide a federal cause of action sufficient to support removal. *See Hendricks*, 160 F.Supp.2d at 1158–59. Even if the field preemption, conflict preemption, or the filed rate doctrine may be a central defense to this action, as federal defenses they are insufficient to support removal jurisdiction. *See Metro. Life*, 481 U.S. at 63, 107 S.Ct. 1542.

### 3. Substantial, Disputed Federal Question

■ Defendants argue that Plaintiffs' claims require resolution of substantial, disputed federal questions. Specifically, Defendants argue that because California Business and Professions Code § 17200 creates a cause of action for "unlawful" conduct, it incorporates by reference violations of other laws. Defendants further argue that because the entire field of natural gas law is governed by FERC, Plaintiffs' claims under § 17200 are governed by federal law. Plaintiffs argue their right to relief does not rely on a single federal question. Rather, Plaintiffs argue that all they need to prove is conduct in violation of California's Cartwright Act and Unfair Competition Law irrespective of federal law.

Where a claim depends on the resolution of a substantial, disputed federal question, a plaintiff may not defeat federal jurisdiction by failing to plead necessary federal questions in the complaint. *Franchise Tax Board*, 463 U.S. at 22, 103 S.Ct. 2841. Alternatively, a defendant may not remove to federal court, unless the plaintiff's claim arises under federal law. *See id.* at 10, 103 S.Ct. 2841. Only cases in which a federal question appears on the face of the well-pleaded complaint are removable. *See Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425.

FERC's exclusive jurisdiction, as provided for in the NGA, does not preempt all state regulation. As previously stated, FERC's exclusive jurisdiction is not so broad as to preempt state law anti-trust claims. Defendants allegedly manipulated privately held price indices, online trading websites, and computer software in a conspiracy to manipulate the "spot market" prices for natural gas. Defendants' core conduct in these claims is not governed by federal law. Rather, they are state law claims of anti-competitive and unfair business practices. Plaintiffs' claims are not dependant on the fact that the product at issue is gas.

Furthermore, simply because Plaintiffs allege natural gas rates are unfair does not necessarily depend on whether those practices were permissible under the NGA. In *Hendricks v. Dynegy Power Mktg.*, 160 F.Supp.2d 1155 (S.D.Cal.2001), the court held that a claim challenging unfair or fraudulent conduct in California's energy market does not necessarily raise a federal question. *Id.* at 1163. The *Hendricks* court concluded:

> It logically follows that Plaintiffs' Cal. Bus. & Prof.Code § 17200 claims may also not be recharacterized as federal under the artful pleading doctrine because they flow from Defendants' al-

leged anticompetitive acts in violation of the Cartwright Act, and not from a violation of the Federal Power Act. Furthermore, the California Supreme Court has recognized that § 17200 provides a cause of action for unfair business practices even in the absence of the breach of any other law. *Id.* at 1164 (citing *Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (Cal.1999)).

If Plaintiffs were challenging the natural gas rates as not being "just and reasonable" under 15 U.S.C. § 717c, then they would be raising a substantial federal question within the exclusive jurisdiction of the NGA, but that is not the case here. Rather, Plaintiffs have alleged misconduct that does not necessarily depend on whether those practices were permissible under the NGA. *See Cel-Tech Communications,* 20 Cal.4th at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.

Defendants further rely on *People of the State of Cal. ex rel. Lockyer v. Mirant,* 2002 WL 1897669 (N.D.Cal.) and *T & E Pastorino Nursery v. Duke Energy Trading and Marketing,* 268 F.Supp.2d 1240 (S.D.Cal.2003), to support their argument that questions of federal law constitute an essential element of each of Plaintiffs' claims. Both cases dealt with causes of action emerging from the California energy crises and in both cases Plaintiffs claimed violations of the California Business and Professions Code § 17200 et. seq. *See Mirant,* 2002 WL 1897669, at *1; *T & E Pastorino,* 268 F.Supp.2d at 1243. In *Mirant,* the plaintiffs predicated their complaint directly on violations of the FPA, thus the court held that "[s]uch claims necessarily involve resolution of a federal question." *Id.* The core conduct plaintiffs alleged in *Mirant* to be non-competitive and conspiratorial was centrally governed by the FPA, federal law.[15] *Id.* In *Pastorino,* Plaintiffs alleged Defendants manipulated the ancillary services energy market, governed by the FERC-approved ISO tariff. *Pastorino,* 268 F.Supp.2d at 1246. The court held the defendants' conduct, although pled as a state law claim, was "plainly premised, in part on Federal law." *Id.* Therefore even though the plaintiffs pled the claims as state law claims, the federal district court had jurisdiction. *Id.*

Defendants contend that *Mirant* and *T & E Pastorino* control the outcome in this case. They argue the courts in *Mirant* and *Pastorino* "asserted jurisdiction over claims that were governed by federal tariffs because 'a tariff filed with a federal agency is the equivalent of a federal regulation.' The holding of *T & E Pastorino* applies *a fortiori* here, because the conduct at issue is expressly governed by FERC regulations." (Defs.' Joint Consolidated Opp'n to Mot. for Remand 4 (internal citations omitted).) Supporting this argument, Defendants cite to FERC Order

---

**15.** The plaintiffs predicated their claims on the FPA:

[D]efendants have engaged in acts of unfair competition as defined in Business and Professions Code section 17200, as follows: Each and every sale or purchase of wholesale electricity by defendants for which defendants failed to file the charge rate, price, or contract reflecting the terms of the sale or purchase, as required by the Federal Power Act, FPA, regulations and FERC or-

ders setting forth filling requirements. [D]efendants have engaged in acts of unfair competition as defined in Business and Professions Code section 17200, as follows: Each and every rate, charge, or price charged by defendants in violation of the Federal Power Act, 16 U.S.C. § 824d(a), as unfair, unreasonable, and therefore unlawful.

*Mirant,* 2002 WL 1897669 (N.D.Cal.) (internal citations omitted).

No. 644 where, they assert, FERC confirms its exclusive jurisdiction over the cause of action. *Id.* Plaintiffs contend that FERC Order No. 644 in actuality demonstrates that FERC did not regulate the natural gas industry at the time of the wrongful conduct, and therefore is proof that federal law does not preempt state law.

A brief comparison of the energy market and the natural gas market explains why *Mirant* and *T & E Pastorino* are not controlling in this case. As the court explained in *Mirant,* prior to the energy crisis that began in 2000, California restructured the generation, transmission, sale, and distribution of electricity in order to shift from a regulatory system to a market driven system of energy sales. *Mirant,* 2002 WL 1897669. The result of the restructuring was the passage of Assembly Bill 1890 by the California legislature. *Id* at *1. Bill 1890 provided for the creation of two non-governmental corporations, the Independent System Operator (ISO) and the California Power Exchange (PX). *Id.* Both the ISO and the PX are organized under California law, but are *governed* by FERC. *Id.*

Unlike the energy market, the natural gas market largely was deregulated at the time of the alleged anti-competitive conduct. Federal Energy Regulatory Commission, *Final Report on Price Manipulation in Western Markets: Fact–Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices,* Docket No. PA02–2–00, II–61 (Mar.2003). The natural gas industry first was regulated by the federal government with the passage of the Natural Gas Act in 1938. 15 U.S.C. § 717. The NGA gave the Federal Power Commission, FERC's predecessor, rate-setting authority on the transmission of natural gas. With the passage of the NGPA of 1978 and the Natural Gas Well-

head Decontrol Act of 1989 ("NGWDA"), Congress deregulated the wellhead price of natural gas. *Id.* "The NGPA accelerated a fundamental change in the natural gas industry-natural gas ... [became] a separate and distinct economic commodity: distinct from oil, distinct from transportation, and distinct from storage and various load balancing services." *Id.* (citing *Pennzoil Co. v. FERC,* 645 F.2d 360, 378–79 (5th Cir.1981)). In response to the NGPA and the NGWDA, FERC deregulated the wellhead price of natural gas in order to "finally complete the evolution to competition in the natural gas industry...." *Pipeline Service Obligations and Revisions to Regulations Governing Self–Implementing Transportation; and Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol,* 13 Fed.Reg. 13267, 13268 (to be codified at 18 C.F.R. pt. 284). FERC envisioned this action to be the beginning of a market driven gas industry, stating "[n]ow the complete deregulation of the wellhead market is on the horizon." *Id.*

> To sum up, in the evolution of the natural gas industry from passage of the NGA in 1938 to the passage of the Decontrol Act, the industry has been transformed from the "traditional" structure where "pipelines purchased gas from producers (at regulated prices) and transported that gas to consuming markets where it was resold to LDCs (at regulated prices) and end users" to a new structure where "LDCs and industrial end users increasingly have utilized pipelines only to transport (at regulated rates) the gas that they purchase (at decontrolled prices) directly from producers and markets."

*Id.* at 13272 (citing S.Rep. No. 39, 101st Cong., 1st Sess., at p. 1 (1989)).

From the time of the deregulation of the natural gas industry until after the Califor-

nia energy crisis, FERC regulation did not provide or enforce explicit guidelines or prohibitions regarding any of the conduct alleged in the Complaints. *Price Manipulation in Western Markets,* Docket No. PA02–2–000 at ES–6 ("Reliant's churning did not violate the blanket certificate under which it sold gas because Section 284.402 of the regulations contains no explicit guidelines or prohibitions."). The Defendants could not have violated FERC guidelines because no guidelines existed regarding the alleged wrongful misconduct. *Id.* Thus, unlike the energy industry, which partially was regulated by the FERC-supervised ISO and PX, the natural gas industry was driven almost completely by the market forces of supply and demand.

*Mirant* and *T & E Pastorino* both addressed anti-competitive behavior in the energy market during the California energy crises. *See Mirant,* 2002 WL 1897669, *2; *T & E Pastorino,* 268 F.Supp.2d at 1243. In *Mirant,* the core of the complaint concerned an ISO tariff. *See id.* The court found that federal jurisdiction existed, stating:

> [H]ere the AG asserts liability based on defendants' violation of the ISO tariff. Because it is adopted by FERC as a federal regulation, the ISO tariff is more than a contract between private parties: it is federal law. As the AG's claims are based on violation of the ISO tariff, they are based on violation of federal law.

*Id.* at *6. Thus, the court found that federal law, the FERC governed ISO tariff, created the cause of action and therefore the federal court had jurisdiction. *Id.* Similarly, in *T & E Pastorino,* the court found that "although Plaintiffs' theories are posited on state law claims-*i.e.* violation of California Business and Professions Code § 17200-they are founded to some degree on the Defendants' conduct in the ancillary services market that is governed by ISO tariff, the propriety of which must be exclusively determined by federal law."[16] *T & E Pastorino,* 268 F.Supp.2d at 1246–47. Jurisdiction did not arise from 28 U.S.C. § 1331, but rather because the conduct regulated by the ISO tariff is the exclusive jurisdiction of FERC under the jurisdiction provision of the FPA, 16 U.S.C. § 825p.[17] *Id.* at 1247

*Mirant* and *T & E Pastorino* hold that the federal courts have exclusive jurisdiction under the FPA regarding conduct in violation of ISO tariffs. *See Mirant,* 2002 WL 1897669, *5; *T & E Pastorino,* 268 F.Supp.2d at 1246. The natural gas market is not governed by a similar regulatory system. *See Price Manipulation in Western Markets,* Docket No. PA02–2000 at ES–6. Although the FPA's § 825p and the NGA's § 717u jurisdictional provisions are identical, the central inquiry in both *Mirant* and *T & E Pastorino* was not whether the FPA's exclusive jurisdiction provision granted original jurisdiction, which it does not. Rather, the central inquiry was whether a cause of action con-

**16.** In *T & E Pastorino,* the court notes that the context of the allegations in *Mirant* are identical to the claims in *T & E Pastorino* in that they both predicated their claims on violations of the ISO Tariff. *See T & E Pastorino,* 268 F.Supp.2d at 1246 ("Thus, in the context of allegations identical to those included in Plaintiffs' complaint here, Judge Walker found that federal law created the cause of action alleged by the AG and, thus, the court had subject matter jurisdiction.").

**17.** 16 U.S.C. § 825p provides:

> The District Courts of the United States, and the United States Courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations and orders thereunder . . .

cerning the violation of the FERC-approved ISO tariff arose under federal law. *T & E Pastorino*, 268 F.Supp.2d at 1246. As stated previously, exclusive jurisdiction does not create original jurisdiction. *See Pan American*, 366 U.S. at 664, 81 S.Ct. 1303. Rather, for a federal court to have exclusive jurisdiction a cause of action must arise from duties created by federal law, as was the case in both *Mirant* and *T & E Pastorino*. In these cases, the causes of action arose from duties created by federal law. Here, Plaintiffs' claims do not arise from any federal law or regulation, and therefore this Court does not have exclusive federal jurisdiction.

Defendants also argue that the recent decision of *People of the State of Cal. v. Dynegy*, 375 F.3d 831 (9th Cir.2004), establishes that this Court possesses jurisdiction under the NGA. (Letter, CV–S–03–1431, Doc. # 82.) Plaintiffs argue that *Cal. v. Dynegy* simply confirms that FERC has exclusive jurisdiction over violations of ISO tariffs within the energy markets, and has no effect on the questions presented in these cases. (Letter, CV–S–03–1431, Doc. # 71.) In *Cal. v. Dynegy*, the Ninth Circuit confirmed that ISO tariffs are the equivalent of a federal regulation, and therefore are within the exclusive jurisdiction of FERC pursuant to the Federal Power Act. *See id.*, 375 F.3d at 839–40 ( "The state lawsuit turns, entirely, upon the defendant's compliance with a federal regulation. The [ISO] tariff defines the companies' contractual obligation with respect to the conduct at issue. Absent a violation of the FERC-filed tariff, no state law liability could survive."). As in *Sparta Surgical*, the gravamen of the Complaint in *California v. Dynegy* was whether or not defendants had violated a federal regulation. *Id.* at 841 ("The very face of California's complaint betrays that the gravamen of the complaint is in the

companies' alleged violations of federal tariff obligations.").

*Cal. v. Dynegy* does not affect the outcome of the cases pending before this Court. First, these cases must be evaluated within the unique context of the natural gas industry. Unlike the electricity sales governed by the PX or the ISO, the transactions at issue in the Complaints were not made on any exchange established or governed by federal tariffs, but occurred on privately held and run exchanges. Furthermore, as previously explained, at the time of the Defendant's alleged misconduct FERC did not have any regulations regarding a code of conduct or reporting obligations. *See* 18 C.F.R. § 284.402(a). While the jurisdictional provisions of the FPA and the NGA may be similar, the markets at issue in these cases are vastly different, therefore the decision of *Cal. v. Dynegy*, which deals specifically with the electricity market, does not affect the outcome of the cases pending in front of this Court.

## IV. CONCLUSION

Plaintiffs, as masters of their Complaints, chose to bring these causes of action in California state court. Although there is a significant federal interest in the natural gas industry, this Court is not persuaded that Congress intended to completely preempt state-based anti-competition and unfair business claims.

Because the Court has determined that remand is appropriate, Plaintiffs Request for Judicial Notice in Support of Plaintiff's Consolidated Reply in Support of Motion to Remand, as well as all other pending motions will be denied as moot without prejudice to renew the same in the appropriate state court. The Court will address in a separate order Defendant A.L. Gilbert's Opposition to Remand based on Di-

versity Jurisdiction (CV–S–03–1431–PMP (PAL), Doc. # 21.)

**IT IS THEREFORE ORDERED:**

Plaintiff Shanghai 1930 Restaurant Partners, L.P.'s Motion to Remand (CV–S–03–1433–PMP (PAL), Doc. # 9) is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the City and County of San Francisco, State of California.

Plaintiff A.L. Gilbert Co.'s Motion to Remand (CV–S–03–1434–PMP (PAL), Doc. # 12) is hereby GRANTED pending resolution of the Opposition to Remand based on Diversity Jurisdiction (CV–S–03–1431–PMP–PAL, Doc. # 21) which will be addressed in a separate order. Therefore this case is not remanded until resolution of that claim.

Plaintiff Oberti Wholesale Foods, Inc.'s Motion to Remand (CV–S–03–1435–PMP (PAL), Doc. # 12) is hereby GRANTED. The case is hereby remanded to the Superior Court of the State of California in and for the County of Alameda, State of California.

Plaintiff David C. Brown's Motion to Remand (CV–S–03–1436–PMP (PAL), Doc. # 14) is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the County of Alameda, State of California.

Plaintiffs Laurence Uyeda, et al.'s Motion to Remand (CV–S–03–1438–PMP (PAL), Doc. # 6), is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the County of San Diego, State of California.

Plaintiff Craig Podesta's Motion to Remand (CV–S–04–0186–PMP (PAL), Doc. # 5), is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the County of San Joaquin, State of California.

Plaintiffs Mark and Susan Benscheidt et al.'s Motion to Remand (CV–S–04–0653–PMP (PAL), Doc. # 16), is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the County of San Diego, State of California.

It is further ordered that Plaintiffs Team Design, et al.'s Notice of Joinder in Plaintiffs Laurence Uyeda et al.'s Motion to Remand (CV–S–03–1431–PMP (PAL), Doc. # 8) is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the County of Los Angeles, State of California.

Plaintiffs Vittice Corporation, et al.'s Notice of Joinder and Joinder in Motions to Remand (CV–S–04–0532–PMP (PAL), Doc. # 10), is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the County of Alameda, State of California.

Finally, Plaintiff City of Los Angeles's Notice of Joinder in Motions for Remand to State Court (CV–S–04–1431, Doc. # 29) is hereby GRANTED. The case is hereby REMANDED to the Superior Court of the State of California in and for the County of Los Angeles, State of California.